**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GAIL ALLEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:17 CV 9294 |
| v. ) | Hon. Marvin E. Aspen |
| ) | |
| COLLECTION PROFESSIONALS, INC. ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

This dispute concerns whether third-party collectors may charge service fees for online payment. Plaintiff Gail Alleman received medical services from Sarah Bush Lincoln Health System ("SBLHS"), for which she had an outstanding debt. SBLHS contracted Defendant Collection Professionals, Inc. ("CPI") to collect Plaintiff's outstanding debt. Plaintiff received eight communications from CPI, all of which advertised both online, check, and in–person payment options. Plaintiff paid a portion of her debt to CPI through its online portal that caused CPI to assess her a $3.00 service fee for online payment. Plaintiff claims the service fee was unlawful under the Fair Debt Collection Practices Act ("FDCPA"), the Illinois Collection Agency Act ("ICAA"), and the Illinois Consumer Fraud Act ("ICFA"). The Parties cross–moved for summary judgment on all counts. (Def. Motion for Summary Judgment (Dkt. No. 98); Pl. Motion for Summary Judgment (Dkt. No. 95).) For the foregoing reasons, we **grant** Defendant's motion for summary judgment. We **deny** Plaintiff's cross–motion for summary judgment.

**BACKGROUND**

This dispute boils down to a disagreement over the meaning of the phrase "reasonable collection costs" in a medical billing agreement. The majority of the facts are undisputed, except the meaning of this phrase. We briefly summarize the facts below, then turn to the legal questions at the center of the dispute.

Plaintiff Gail Alleman is a resident of Illinois. (Def.'s Mot. Summary Judgmt. Statement of Undisputed Material Facts ("Def. SMF") (Dkt. No. 100) ¶ 1; Pl.'s Cross–Mot. for Summary Judgmt. Statement of Material Facts ("Pl. SMF") Dkt. No. 96–1 ¶ 3). Plaintiff received medical services from SBLHS. (Def. SMF ¶ 14; Pl. SMF ¶ 9.) Plaintiff entered a service agreement with SBLHS, which is the subject of the collection activity before this Court. (Def. SMF ¶ 14; Pl. SMF ¶ 9; SBLHS Agreement (Dkt. No. 100–5) at 1.) Plaintiff failed to pay the amount due to SBLHS. (Def. SMF ¶ 19; Alleman Deposition (Dkt. No. 100–1) at 37:12–17.) SBLHS hired Defendant CPI to collect its debt from Alleman. (Pl. SMF ¶ 9.)

Defendant Collection Professionals, Inc. ("CPI") is an Illinois corporation that collects consumer debt and holds a collection agency license in Illinois. (Pl. SMF ¶¶ 5–6.) Defendant attempted to collect Plaintiff's debt created in the SBLHS Agreement. (*Id.* ¶¶ 9–10.) Between November 5, 2016 and April 7, 2017, CPI sent Plaintiff eight letters seeking payment of this debt. (Def. SMF ¶ 20; Pl. SMF ¶ 10.) Plaintiff did not pay the balance of the SBLHS debt in response to these eight letters. (Def. SMF ¶ 23.) She did make a payment in the amount of $43.22 on March 19, 2017 (Def. SMF ¶ 24; Pl. SMF ¶ 12; Payment Screen Capture (Dkt. No. 96–1, Appendix C); Payment Screen Capture (Dkt. No. 100–7).). Plaintiff's made this payment on CPI's website. (Def. SMF ¶ 26; Pl. SMF ¶ 12.) The payment screen broke down the

charge Plaintiff paid into two categories: a $40.22 "subtotal," and a $3.00 "Service Fee." (Def. SMF ¶ 27; Payment Screen Capture.)

The SBLHS Agreement contained language stating that Ms. Alleman agreed to "pay the balance on the account plus the late charge fee, all reasonable collection costs, court, and reasonable attorneys' fees." (SBLHS Agreement at 1). The parties dispute the meaning of the phrase "all reasonable collection costs." (Def. Memo. in Support of Mot. Summary Judgement ("Def. MSJ Memo") (Dkt. No. 103) at 5; Pl. Memo. in Support of Cross–Mot. Summary Judgmt. ("Pl. MSJ Memo") (Dkt. No. 96) at 8.). Defendant understands this phrase to include its Service Fee. (Def. MSJ Memo at 5–6.) Plaintiff understands this phrase to at most include pass-through fees or fees SBLHS itself incurred in collecting her debt. (Pl. MSJ Memo at 8–9.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a party is entitled to summary judgment only if it demonstrates there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "On cross–motions for summary judgment, the Court assesses whether each movant has satisfied the requirements of Rule 56." *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 125 F.Supp.3d 810, 813 (N.D. Ill. 2015). As with any summary judgment motion, we consider cross–motions for summary judgment "construing all facts, and drawing all reasonable inferences from those facts,

in favor of the non–moving party." *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013)

(citing *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008)).

## ANALYSIS

Plaintiff alleges CPI violated the FDCPA, the ICAA, and the ICFA when they assessed

her a service fee to pay a portion of her debt using a debit card. (Compl. ¶¶ 28, 38, 48.) Alleman

alleges CPI's service fee was both false or misleading, and unfair and unconscionable in

violation of § 1962e and § 1692f of the FDCPA, respectively. (Compl. ¶ 28.) Defendants

respond their fee was neither false and misleading, nor unfair and unconscionable, either because

it reflects their actual costs to offer online payment options or because the fee was included in

"all reasonable collection costs" that Alleman agreed to pay. (Def. MSJ Memo at 6–8). She

further claims the service fee violates the ICAA's prohibition on charging fees prohibited under

state law. (Compl. ¶ 38.) Alleman argues the ICAA itself confers a private right of action for her

claim. (Pl. MSJ Memo at 13). Defendants argue the ICAA does not confer a private right of

action. (Def. Resp. Pl. MSJ Memo at 13). Finally, Alleman claims CPI's service fee violates the

prohibition on unfair or deceptive acts or practices. (Compl. ¶ 48; Pl. MSJ Memo at 12).

Defendants claim their service fee was neither unfair nor deceptive. (Def. MSJ Memo at 18–19.)

The Parties cross–moved for summary judgment on all counts.

(Def. Motion for Summary Judgment (Dkt. No. 98); Pl. Motion for Summary Judgment

(Dkt. No. 95).)

## I.    FDCPA

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692, seeks to protect consumers

from abusive collection practices. The FDCPA proscribes debt collectors use of unfair or

unconscionable means to collect any debt. 15 U.S.C. § 1692f. The Act also proscribes false or

4

misleading representations or means in connection with the collection of any debt.

15 U.S.C. § 1692e. Both sections contain examples of possible violations, but neither is limited

to the application of the listed violations. *Id.* at 1692e, 1692f.

### A. Section 1692f (Unfair Collection Practices)

Collection of any amount is unfair or unconscionable, unless expressly authorized by the

contract creating the debt or as permitted by law. 15 U.S.C. § 1692f(1). In attempting to discern

the meaning of "unfair or unconscionable," the Seventh Circuit has noted that this phrase "is as

vague as they come." *Ramirez v. Mandarich Law Grp., LLP*, No. 18 C 3257,

2019 WL 1426015, at *4 (N.D. Ill. Mar. 29, 2019) (quoting *Beler v. Blatt, Hasenmiller, Leibsker*

*& Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007)). The test to determine whether § 1692f has

been violated is whether the collector's conduct would be unfair or unconscionable when

directed towards an unsophisticated but reasonable consumer. *Turner v. J.V.D.B. & Associates,*

*Inc.*, 330 F.3d 991, 996 (7th Cir. 2003); *Gros v. Midland Credit Management*, No. 06 C 5510,

2008 WL 4671717, at *7 (N.D. Ill. Oct. 20, 2008). "[A] collector who collected a charge

unauthorized by the debt agreement or by law, even by accident, would violate § 1692f(1)." *Id.*

Plaintiff argues collection costs attributable to a third party's operations must themselves

be authorized in an agreement between the creditor and debtor. (Pl. MSJ Memo at 8–9).

Defendants respond that their collection costs are allowable pass-through costs or that they were

authorized in the agreement as part of "all reasonable collection costs." (Def. MSJ Memo at 5-8).

Plaintiffs argue that the credit card processing fee was an "incidental cost" within the

meaning of § 1962f, since the fee is not directly connected to the debt itself.

(Pl. MSJ Memo at 6.) Defendants argue electronic payment processing fees are not incidental,

and thus do not fall within § 1962f. (Def. MSJ Memo at 5–6.) Defendants further claim CPI's

convenience fee is a pass-through charge from its electronic payment provider, BillingTree, and thus not incidental. (*Id.* at 8–10.)

Debt collectors cannot collect costs incidental to the initial debt. 15 U.S.C. § 1962f(1). "[A] charge is "incidental" to a debt within the meaning of § 1692f if it is incurred in connection with efforts to collect that debt." *Johnson–Morris v. Santander Consumer USA*, Inc., 194 F. Supp. 3d 757, 765 (N.D. Ill. 2016) (citing *Shula v. Lawent*, 359 F.3d 489, 493 (7th Cir. 2004)). "The majority of courts have determined… flat transaction fees are incidental to the principal obligation, and thus, fall under the scope of the FDCPA." *Johnson–Morris*, 194 F. Supp. 3d at 764 (quoting *Wittman v. CB1, Inc.*, No. 15–105–BLG–BMM, 2016 WL 3093427, at *2 (D. Mont. June 1, 2016)). Convenience fees may be considered incidental, since the fees only arise as a result of a particular payment method used, without regard for the size or nature of the underlying debt. *Id.* (citing *Shula*, 359 F.3d at 493). The voluntariness of the payment method is not relevant: "offering a payment option that does not violate the statute does not save offering a payment option that would violate the statute." *Id.* (citing *Acosta v. Credit Bureau of Napa County*, No. 14–C–8198, 2015 WL 1943244, at *3–4 (N.D. Ill. April 29, 2015)).

Defendant's characterization of its fee as connected to the debt is not plausible on this record. The fee CPI charges consumers for online payment is not a function of its costs, since it is a flat fee. *See Johnson-Morris*, 194 F. Supp. 3d at 764; *Shula* 359 F.3d at 493. CPI would need evidence that its costs of payment processing were similarly flat to even get themselves in the ballgame, which they have not done. (Def. MSJ Memo at 7–9.) Defendant presented the fee as a component of the amount it collected from Alleman for payment of the debt; at that point, CPI

attempted to collect an incidental fee disconnected from the underlying debt obligation from Alleman. (Def. SMF ¶ 27.)

Defendant's further characterization of the caselaw as interpreting "collection costs" to include convenience fees as non-incidental costs is similarly unpersuasive. (Def. Resp. Pl. Memo in Supp. of Mot. for Summ. Judgment ("Def. Resp. Memo") (Dkt. No. 109) at 1–3). None of the cases Defendant cites deal with a convenience fee as a "collection cost" or a similarly worded agreement. (*Id.*) First, *Levine v. Creditors' Protection Serv., Inc.*, deals with a 25% flat fee a collection agency charged a creditor, which the creditor passed on to its debtor. No. 17 C 2537, 2019 WL 1077126, at *8 (N.D. Ill. March 7, 2019) (slip op.). In other words, the *Levine* defendant was passing through a cost the creditor itself incurred in order to have an agency collect debt on its behalf. *Id.* In contrast, here CPI, rather than SBLHS, incurs the cost of electronic payments and recoups them directly from debtors. (Def. MSJ Memo at 7.) Second, *Bernal v. NRA Group, LLC* raised whether a creditor could pass the costs its debt collection agency charged on to the debtor under the terms of an agreement that included the phrase "costs (including reasonable attorney's fees)." No. 16 C 1904, 2017 WL 4948544, at *1–2 (N.D. Ill. Nov. 1, 2017). The dispute thus raised only whether the creditor could pass on *its* costs of collecting to the debtor, rather than the costs of the *debt collection agency* incurred from *its agent*. *See id.* at *2. In addition, the cost was not a convenience fee, but instead a contingent fee the collection agency charged the creditor. *Id.* In contrast, here CPI is attempting to pass the costs from its payment vendor BillingTree directly to the consumer, rather than to SBLHS. (Def. MSJ Memo at 7–8.) If CPI passed the costs to SBLHS and then SBLHS attempted to collect the cost itself, *Bernal* would be instructive, but this is not the case.

Plaintiff's characterization of collection costs as those costs connected to the underlying debt, rather than from a subsidiary service provided wholly at the discretion of the collection agency, more closely tracks both the FDCPA and the law. *See Johnson-Morris*, 194 F. Supp. 3d at 764; *Shula* 359 F.3d at 493. In *Johnson-Morris*, the court held that a flat $5 internet payment charge was incidental to the underlying debt because it had no relationship to the underlying obligation. 194 F. Supp. 3d at 764. Similarly, *Shula*'s standard for "incidental" fees includes only fees *arising from the debt itself*, not all fees related to efforts to collect a debt. 359 F. 3d at 493; *see also Johnson-Morris*, 194 F. Supp. 3d at 765 (citing *Shula* for this proposition).

Even if the convenience fee is incidental, it may nonetheless be permissible as a pass-through cost. Reasonable collection costs may include pass-through costs. *See Acosta v. Credit Bureau of Napa County*, No. 14–C–8198, 2015 WL 1943244, at *2 (N.D. Ill. April 29, 2015) (citing *Shami v. National Enterprise Systems*, No. 09–722, 2010 WL 3824151, at *2–4 (E.D.N.Y. Sept. 23, 2010)). "It is immaterial that the fee was optional and fully disclosed if the fee is impermissible altogether." *Acosta*, 2015 WL 1943244, at *4. The defendant must establish that its payment was a pass-through fee, since this is an *exception* to the general bar on "collection" of debts. *Id.* ("To prevail on its argument that the FDCPA is inapplicable, *Defendant* must show that its $14.95 credit card processing fee was a pass-through fee." (emphasis added).)

There is some question about what constitutes a pass-through fee. For example, the court in *Acosta* defined "[a] pass-through fee" as "where, for example, a credit card company such as Visa charges the debt collector $14.95 to process credit card payments and, in turn, the debt collector charges debtors the same amount if they pay by credit card." *Id.* The question is

whether the credit card provider "initiated the fee" that was then passed to the consumer. *Id.* In addition, the court in *Johnson-Morris* suggested a pass-through fee may need to be used to "turn a profit" or "inure benefits to the collector." 194 F. Supp. 3d at 765. Thus, read together, the two cases suggest pass-through convenience fees are charges initiated by a credit card provider from which the collection agency earns no profit itself.

The record before this court shows that the payment vendor initiated the convenience fee and that CPI turned no profit from the fee, so the exception excluding pass-through fees from the FDCPA's definition of "collection" applies. *See Acosta*, 2015 WL 1943244, at *3. The Declaration of Mr. Edwards suggests CPI does not profit from its collection fees, and that CPI processes its payments to BillingTree and receipts of convenience fees out of a single account. (Decl. of Scott Edwards (Dkt. No. 70–2); Dep. of Melissa Nelson (Dkt. No. 100–4) at 10). Since the Declaration of Mr. Edwards clearly establishes CPI inures no benefit from its convenience fees, and in fact suffers a loss from its payment vendor, CPI's fees would be "pass-through" under *Johnson-Morris*'s reading of the test. (Decl. of Scott Edwards at 2.)

The FDCPA is to be broadly construed for the benefit of consumers. *See Heyer v. Pierce & Assoc.*, No. 14 C 854, 2017 WL 75739, at *12 (N.D. Ill. Jan 9, 2017) (citing *Caprio v. Healthcare Revenue Recovery Grp.*, LLC, 709 F.3d 142, 148 (3d Cir. 2013)); *see also Bass v. Stolper, Koritzinsky, Brewster & Neider, SC*, 111 F.3d 1322, 1324 (7th Cir. 1997) ("The primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices."). Consumers receive the *same or more* protection under the reading of pass-through costs that includes partial pass-through costs. Consumers are not *exploited more* because they pay *less than* the full cost a debt collector pays to a service vendor. In fact, reading pass-through costs restrictively would lead to the perverse

result of encouraging debt collectors to charge consumers *all* of their costs, rather than only a component of their costs. Thus, the general interpretive principle of reading the FDCPA for consumers' benefit suggests we should adopt a combined reading of *Acosta* and *Johnson-Morris*'s reading of "pass-through costs." As explained above, under this reading, there is no genuine issue of material fact about whether CPI's cost is a pass-through cost, since its convenience fee account always operated at a loss in the relevant period.

(Decl. of Scott Edwards at 2.) As a result, the convenience fee is at least a *partial* pass-through cost, and thus protected from liability under the FDCPA, because CPI did not attempt to collect an incidental cost; instead, CPI merely sought to pass through a cost, not *collect an incidental obligation itself*. Had Alleman chosen a different method of payment, CPI would not have charged Alleman anything, because BillingTree would not have charged CPI to process her payment. As a result, we grant the Defendant's motion for summary judgment on the § 1962f claim and deny the Plaintiff's motion for summary judgment.

### B.     Section 1692e (False or Misleading Representations)

Collectors may not engage in false or misleading representations or means in connection with the collection of any debt. 15 U.S.C. § 1692e. The parties dispute centers on whether CPI's assessment of a "service fee" created an implicit misrepresentation that CPI had legal authority to assess a service fee. We judge whether Defendant made a false or misleading representation under an objective standard. *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). In other words, nothing turns on what the debt collector knew; instead, the test is whether the debt collector's communication would deceive or mislead an unsophisticated, reasonable consumer. *Id.*; *see also Gammon v. GC Servs. Ltd. P'Ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). Intent is an *affirmative defense* under § 1962k(c), meaning that the burden to

prove the collector's error was a "bona fide mistake" falls on the Defendant. *See Turner*, 330 F.3d at 995 (interpreting 15 U.S.C. § 1962k(c)). Claims under § 1962e can include claims that an objectively reasonable reading of a collector's collection letter would lead an unsophisticated reader to believe she owed a debt she did not owe. *Id.*

If Plaintiff states a claim under § 1962f, then Plaintiff also states a claim under § 1962e, because the Defendant's implicit assertion of its lawful authority to collect would be misleading and/or false. *See Acosta*, 2015 WL 1943244, at *4 (holding the same in a credit card fee dispute where it denied defendant's motion to dismiss a similar § 1962f(1) claim).[1] Here we have held there is no genuine issue of material fact as to the legality of CPI's convenience fee, which means Defendant's implicit assertion of lawful authority to collect its pass-through costs was not misleading or false. Thus, we deny summary judgment to the Plaintiff and grant summary judgment to the Defendant as to the § 1962e claim.

## II.     ICAA

No private right of action exists under ICAA § 9. We have previously spoken on this issue in *Skinner v. LVNV Funding LLC* and see no reason to depart from our reasoning. 2018 WL 319320, No. 16 C 7089, at *5 (N.D. Ill. Jan. 8, 2018). Plaintiffs point to no new developments in Illinois law warranting reconsidering our conclusion in *Skinner*. Thus, we grant

---

[1] The FDCPA and ICFA have not been interpreted the same way in this regard, because the "unfair" and "deceptive" practices components of the ICFA each have their own independent standard under Illinois Law. *See, e.g.*, *Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250, F.3d 570, 575–76 (7th Cir. 2001) (describing standard for deceptive practices claim); *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403,417, 775 N.E.2d 951, 960 (2002) (describing standard for unfair practices claim).

Defendant's motion for summary judgment on Count II and deny Plaintiff's motion for summary judgment on Count II.[2]

### III.    ICFA

The Illinois Consumer Fraud Act prohibits "the misrepresentation or concealment, suppression or omission of any material fact" in the conduct of trade or commerce. 815 Ill. Comp. Stat. § 505/2 (West 2000); *Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 575–76 (7th Cir. 2001). To state a claim for a violation of this component of the Act, a plaintiff must allege: (1) a deceptive act or practice by the defendant; (2) defendant's intent that the plaintiff rely on the deception, (3) that the deception occurred in the course of conduct involving trade or commerce; (4) that the deceptive act proximately caused plaintiff's injury. *Cozzi*, 250 F.3d at 576.

"As a federal court reviewing a state statute, we must follow the state's highest court's interpretation of its own state law." *Id.* (quoting *Heidelberg v. Illinois Prisoner Review Bd.*, 163 F.3d 1025, 1027 (7th Cir. 1998)). "[T]he Illinois Supreme Court has repeatedly held that…reliance is not required to establish a consumer fraud claim. Whether or not the defendant intended to act deceptively is judged under an objective standard. *Cozzi*, 250 F.3d at 579 (Wood, C.J., concurring); *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 504, 675 N.E.2d 584, 595 (Ill. 1996) (viewing the question of defendant's intent from the perspective of "prospective purchasers" rather than the plaintiff's actual perspective); *see also Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (interpreting *Connick* similarly).

---

[2] Plaintiff's other arguments regarding the ICAA's applicability to the "as provided by law" component of the FDCPA are discussed above.

The ICFA defines the phrase "deceptive act" to include a number of enumerated circumstances, followed by "any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 Ill. Comp. Stat. § 510/2 (West 2019). "When determining whether a statement is deceptive or misleading, in bringing a claim under … the Illinois Consumer Fraud Act, a court considers the statement in context, viewing the product as a whole." *Deckers Outdoor Corp. v. Australian Leather Pty. Ltd.*, 340 F.Supp.3d 706 (N.D. Ill. 2018). "Courts apply a 'reasonable consumer' standard in evaluating the likelihood of deception." *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 740 (N.D. Ill. 2019). Factually accurate statements appearing on a receipt that properly reflect the purpose of the charges they represent do not constitute deceptive practices. *Id.* ("A statement or label cannot mislead unless it actually conveys *untrue information* about a product."); *see also McIntosh v. Walgreens Boots Alliance, Inc.*, —— Ill.3d ——, —— N.E. 3d —— (2019) (unpublished op). Finally, the plaintiff must actually be deceived by a statement or omission in an ICFA action, which requires the defendant made a deceptive communication. *Zak v. Bose Corp.*, No. 17 C 02928, 2019 WL 1437909, at *5 (N.D. Ill. Mar. 31, 2019).

Deception under the ICFA covers a broad array of circumstances, but for the following reasons CPI's service charge is not one of them.

*First*, CPI's bill separated the service charge and debt payment clearly, with separate designations for each and a final total. (Payment Screen Capture; Def. SMF ¶ 27.) CPI did not represent the $3.00 service charge as payment towards Plaintiff's debt to SBLHS. Rather, CPI clearly stated that it was charging Plaintiff for a service it provided her: the convenience of paying using an online payment method.

13

*Second*, CPI's online payment screen affirmatively clarifies that users understand they are paying a service charge because of the form of payment selected. Not only does the payment screen capture show this statement, but Ms. Alleman confirmed as much during her deposition. (Payment Screen Capture; Alleman Dep. at 48:9–50:8).

*Third*, Ms. Alleman knew she could pay using another means without incurring the service charge at the time of her payment. In fact, she chose to pay using her debit card primarily because of the convenience associated with it, knowing that it would cost her $3.00 to do so. (Alleman Dep. at 49:10–20.) Ms. Alleman did not believe her only option was to pay using the online service, nor did CPI represent as such in its communications. In other words, CPI did not mislead or deceive Plaintiff. She knew what she was paying for and why: the convenience of paying from home, online.

*Fourth,* Plaintiff's claim fails because she introduces no evidence suggesting defendant intended to act deceptively, while CPI introduces evidence it provided a service and charged fairly for its service. Plaintiff adduces no evidence supporting a reasonable inference that CPI added its service with the intent to deceive debtors of the lawfulness of its fee. Rather, CPI appears to have a reasonable argument that its service fee is a legal pass-through cost. (Decl. of Scott Edwards (Dkt. 70–2) ¶¶ 8–10.) A reasonable company in CPI's position could believe its service fees, which CPI earned no profit on, were a legal pass-through cost to consumers. Thus, CPI did not possess the requisite intent to deceive Plaintiff that its service fee was lawful; rather, CPI possess a reasonable belief that its service fees are, in fact, lawful.

*Finally,* since we have already explained above that CPI's fee fits within the definition of a pass-through fee, Alleman fails to prove an *actual* deception about the legality of the fee. Put

14

differently, since the fee is legal under the FDCPA, there is no deception about its legality for the purposes of the ICFA.

Plaintiff fails to raise any genuine issue of material fact as to either CPI's intent to deceive or the factual inaccuracy of any statement CPI made with respect to the service charge. As a result, we grant the Defendant's motion for summary judgement on the ICFA count and deny the Plaintiff's cross-motion.

## CONCLUSION

For the reasons stated above, we grant Defendant's summary judgment motion as to all counts of the complaint. We deny Plaintiff's cross-motion for summary judgment.


_____
Honorable Marvin E. Aspen
United States District Judge


Dated: October 29, 2019
        Chicago, Illinois

15